UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

THI THU HOAI TRAN,
Petitioner,
v.
MARKWAYNE MULLIN,
Defendants.

Case No.: 26-cv-3135-RSH-GC

**ORDER GRANTING PETITION**

On May 19, 2026, petitioner Thi Thu Hoai Tran filed through counsel a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). ECF No. 1. Petitioner challenges her detention without a bond hearing, pending her immigration proceedings, as unduly prolonged in violation of due process. ECF No. 1 at 7–15. The merits are fully briefed. *See* ECF Nos. 4, 5.

## I. STATEMENT OF FACTS

Petitioner, a citizen of Vietnam, was arrested at the San Ysidro Port of Entry on August 26, 2025. ECF No. 4-1 at 3. An asylum officer subsequently interviewed Petitioner and determined that she had a credible fear of persecution. *Id.* at 8. On September 20, 2025, the Department of Homeland Security ("DHS") issued Petitioner a Notice to Appear charging her as removable. *Id*. at 8–17. On March 30, 2026, the immigration judge granted

Petitioner withholding of removal and deferral of removal under the Convention Against Torture. *Id*. at 19. DHS appealed that decision on April 29, 2026. *Id*. at 24.

## II. LEGAL STANDARD

Title 28 of the U.S. Code, Section 2241, provides that "[w]rits of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). A detainee bears the burden of demonstrating that "[sh]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3).

## III. ANALYSIS

### A. Jurisdiction

Respondents first challenge this Court's jurisdiction to hear the Petition, relying on 8 U.S.C. § 1252(g). ECF No. 4 at 3–4. That provision states that, except as otherwise provided in Section 1252, and notwithstanding any other provision of law including 8 U.S.C. § 2241, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Respondents argue that because Petitioner challenges her detention during removal proceedings, that detention "arises from" DHS's decision to commence such proceedings. ECF No. 4 at 4.

The Supreme Court has interpreted the jurisdiction-stripping provision in Section 1252(g) narrowly, limiting it to "three discrete actions": the "'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)). The Supreme Court noted that "[t]here are of course many other decisions or actions that may be part of the deportation process." *Id*. In a later decision, the Court explained that it did not interpret Section 1252(g) "to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, [the Court] read the language

to refer to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

Petitioner is seeking to review the legality of her detention, arguing that the length of time she has been detained here is unlawful—rather than challenging the decision to commence proceedings, the adjudication of her removal case, or an action to execute her removal order. ECF No. 5 at 3. She does not seek to litigate in this Court questions of whether he is removable or whether he is entitled to relief from removal. The relief she seeks here is release from custody or a bond hearing at which her release may be considered by an immigration judge. ECF No. 1 at 19–20. The Court concludes that Petitioner's claim is not barred by Section 1252(g).

**B. Whether Petitioner Has a Due Process Claim**

Respondents next argue that under the Supreme Court's decision in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), Petitioner has no due process rights beyond those that Congress has provided, and that her due process claim therefore fails. ECF No. 4 at 7–8. In *Thuraissigiam*, the Supreme Court rejected a habeas petitioner's argument that the due process clause conferred rights to challenge his expedited removal beyond those established by Congress, stating that "an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." 591 U.S. at 107. The petitioner in that case had "attempted to enter the country illegally and was apprehended just 25 yards from the border." *Id.* The Supreme Court determined that the "political department of the government" had plenary authority to admit or exclude aliens seeking initial entry, and thus "an alien in respondent's position has only those rights regarding admission that Congress has provided by statute." *Id.* at 139–40.

Following the Supreme Court's decision in *Thuraissigiam*, some district courts have adopted Respondents' reasoning to dismiss or deny habeas petitions in the context of arriving aliens subject to mandatory detention under Section 1225(b). *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) ("As far as Petitioner is concerned, whatever procedure Congress has authorized is sufficient due process."); *Gonzales Garcia*

*v. Rosen*, 513 F. Supp. 3d 329, 536 (W.D.N.Y. 2021) ("Petitioner is on the threshold of initial entry into the United States and . . . he accordingly is not entitled to procedural protections beyond those provided by statute.").

Most courts have ruled otherwise. *See Abdul-Samed v. Warden of Golden State Annex Det. Facility*, No. 25-cv-98-SAB-HC, 2025 WL 2099343, at *6 (E.D. Cal. July 25, 2025) ("Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b) . . . 'essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'") (quoting *Martinez v. Clark*, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019)); *Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 772 (S.D. Cal. 2020) ("[T]he Court joins the majority of courts across the country in concluding that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."). This Court agrees with the majority position that a person detained under Section 1225(b) may assert a due process challenge to prolonged mandatory detention without a bond hearing.

This Court likewise agrees with those district courts that interpret *Thuraissigiam* as circumscribing an arriving alien's due process rights to *admission*, rather than limiting that person's ability to challenge *detention*. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 825 (W.D. Pa. 2025) ("Nowhere in [*Thuraissigiam*] did the Supreme Court suggest that arriving aliens being held under § 1225(b) may be held indefinitely and unreasonably with no due process implications, nor that such aliens have no due process rights whatsoever."); *Hernandez v. Wofford*, No. 25-cv-986-KES-CDB (HC), 2025 WL 2420390, at *3 (E.D. Cal. Aug. 21, 2025) ("Although the Supreme Court has described Congress's power over the 'policies and rules for exclusion of aliens' as 'plenary,' and held that this court must generally 'defer to Executive and Legislative Branch decisionmaking in that area,' it is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority'—through detention or otherwise.")

(citations omitted); *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The holding in *Thuraissigiam* does not foreclose Plaintiffs' due process claims which seek to vindicate a right to a bond hearing with certain procedural protections.").

Respondents also argue that a much older case, *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), establishes that arriving aliens subject to a mandatory detention scheme, regardless of the length of their detention, never become entitled by the due process clause to a bond hearing. ECF No. 4 at 6–7. This Court does not read *Mezei* to establish such a proposition. *Mezei* involved a noncitizen who had been "permanently excluded from the United States on security grounds but [who was] stranded in his temporary haven on Ellis Island because other countries [would] not take him back." 345 U.S. at 207. In 1950, the Attorney General determined, pursuant to emergency regulations that based on certain confidential information, the noncitizens should be excluded from the United States "for security reasons." *Id.* at 208-10, 214–15. The Supreme Court rejected the noncitizen's constitutional challenge, citing "considerations" of "danger to the national security":

> Thus we do not think that respondent's continued exclusion deprives him of any statutory or constitutional right. It is true that resident aliens temporarily detained pending expeditious consummation of deportation proceedings may be released on bond by the Attorney General whose discretion is subject to judicial review. By that procedure aliens uprooted from our midst may rejoin the community until the Government effects their leave. *An exclusion proceeding grounded on danger to the national security, however, presents different considerations*; neither the rationale nor the statutory authority for such release exists. *Ordinarily to admit an alien barred from entry on security grounds nullifies the very purpose of the exclusion proceeding* ….

*Id.* at 215–16 (citations omitted and emphasis added).

This Court agrees with those courts that distinguish the constitutional holding in *Mezei* as addressing the national security considerations presented in that case. *See Rosales-Garcia v. Holland*, 322 F.3d 386, 413–14 (6th Cir. 2003) ("[T]he *Mezei* Court

explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that Mezei presented a threat to national security."); *Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("*Mezei* may compel the conclusion that arriving aliens already excluded on national security grounds are not entitled to a bond hearing prior to their arranged deportation. However, *Mezei* does not compel the categorical conclusion that all arriving aliens may be subject to prolonged confinement without a bond hearing."); *Kydyrali*, 499 F. Supp. 3d at 772 (finding *Mezei* inapposite to the issue of whether prolonged detention without a bond hearing violates due process); *Rash v. LaRose*, No. 26-cv-8-LL-DEB, 2026 WL 249324, at *4 (S.D. Cal. Jan. 30, 2026) (same). Here, in contrast, neither the Attorney General nor any other government component has made a determination that Petitioner should be excluded on grounds of national security; Petitioner is not seeking to circumvent such a determination by obtaining release into the United States. Petitioner is merely seeking a bond hearing.

The Court concludes that it has authority to review whether Petitioner's detention, pursuant to a scheme of mandatory detention, has become unconstitutionally prolonged.

**C. Whether Petitioner's Detention is Prolonged in Violation of Due Process**

In determining whether Petitioner's detention has become prolonged, the Court applies a six-factor balancing test used by some district courts. *See Kydyrali*, 499 F. Supp. 3d at 773–74; *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). That test considers: (1) the total length of detention to date; (2) the likely duration of future detention; (3) conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal. *See Kydyrali*, 499 F. Supp. 3d at 773–74. Of these factors, the first—the length of detention—is the "most important." *Id.* at 774 (quoting *Banda*, 385 F. Supp. 3d at 1118). Petitioner invokes this six-factor test in the Petition. ECF No. 1 at 12–15.

The Court agrees with Respondents that the length of Petitioner's detention to date—over 11 months—does not by itself, without more, establish prolonged detention in

violation of due process But neither does that length of detention serve as a safe harbor or insulate Petitioner's case from constitutional review. District courts have found comparable periods of mandatory detention without a bond hearing unreasonably prolonged. *See Belov v. Warden, Otay Mesa Det. Ctr.*, No. 26-CV-1518-BTM-BLM, 2026 WL 926903, at *1 (S.D. Cal. Apr. 5, 2026) (granting bond hearing for petitioner detained for almost eleven months); *Amado v. United States Dep't of Just.*, No. 25CV2687-LL(DDL), 2025 WL 3079052, at *5 (S.D. Cal. Nov. 4, 2025) ("Courts have found detention over seven months without a bond hearing weighs toward a finding that it is unreasonable.") (collecting cases); *Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *4 (E.D. Cal. Oct. 28, 2025) ("Petitioner has been detained approximately 11 months. This period . . . qualifies as prolonged.").[1]

The conditions of Petitioner's confinement weigh in her favor. Courts in this district have found that conditions at the Otay Mesa Detention Center, where Petitioner is detained, are "indistinguishable from penal confinement." *Kydyrali*, 499 F. Supp. 3d at 773; *Hoyos Amado v. U.S. Dep't of Justice*, No. 25-cv-2687-LL-DDL, 2025 WL 3079052, at *6 (S.D. Cal. Nov. 4, 2025).

As to the likely duration of Petitioner's future detention, the Court cannot determine precisely how long the appeal will take, Petitioner faces the prospect of a substantial additional period of detention. *See Thompson v. Mullin*, No. 26-CV-2743 JLS (BJW), 2026 WL 1697635, at *3 (S.D. Cal. June 11, 2026) (noting that an "appeal to the BIA may take months, and any appeal to the Ninth Circuit thereafter may take years"); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1119 (W.D. Wash. 2019) (noting appeal of IJ removal order to BIA "may take up to two years or longer"). The record does not attribute any material delay in the removal proceedings to either Petitioner or the Government, rendering the fourth and fifth factors neutral. Finally, on the record presented, the Court is not in a

---

[1] The fact that courts have granted habeas relief in some other cases involving longer periods of detention does not indicate that Petitioner is ineligible for such relief.

position to assess the likelihood that the proceedings will result in a final order of removal; this factor is therefore also neutral.

On balance, the Court concludes that Petitioner's detention has become unreasonably prolonged. Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify his continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released. *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281, (2018) (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond"); *see also Martinez v. Clark*, 124 F.4th 775, 785–86 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)).

## IV. CONCLUSION

For the foregoing reasons, the Petition is **GRANTED** as follows. Respondents are directed to arrange a bond hearing for petitioner Thi Thu Hoai Tran before an immigration court within ***seven (7) days of this order*** as described above or within such later date as she may request. The Court declines to order Petitioner's immediate release, as the Petition does not set forth an adequate legal basis for this relief.

**IT IS SO ORDERED.**

Dated: July 29, 2026

Hon. Robert S. Huie
United States District Judge